## MYER, et al. v. RIVES.

1. Where a guardian invests the funds of his ward in lands, and after the ward comes of age, a receipt in full of the personal estate is given, or a settlement made with the orphans' court, omitting to account for the funds thus invested, the receipt or settlement will be conclusive, unless impeached for fraud, mistake or want of knowledge.

Writ of Error to the Court of Chancery for the twelfth District.

THIS bill is filed by Myer and McQueen and wife against Rives. Its object is the settlement of the several estates of William Myer and Frederick Myer. The former died testate in South Carolina about the year 1820. By his will he left specific legacies to the children of Frederick Myer, his son, as well to those who should be born after his death as to those then living. His will contains a clause directing his executors to purchase lands for the benefit of his heirs. Frederick Myer assumed on himself the sole administration of this will, and removed with the property to the State of Alabama, where he died intestate, leaving nine children, of whom the complainants, Myer and Mrs. McQueen, are two. Rives was appointed his administrator, and was also appointed guardian of his infant children, amongst whom were the complainants last mentioned. Frederick Myer had purchased land in Alabama, and some time after his death, two of his children, of full age, being desirous that his landed estate should be divided or sold, an agreement was made between them and Rives, by which their shares of one ninth, were valued by commissioners appointed by the orphans' court, and the valuation paid them by Rives. The lands were then conveyed to the remaining minor children, and the two receiving the valuation, entered into a stipulation to refund to the minors the sum advanced by Rives upon their coming of age and refusing to ratify the purchase. This

arrangement seems to have had the sanction of the orphans' court, as there is an order for the appointment of commissioners to value the lands. Rives insists he was authorized to enter into this arrangement by virtue of the will of William Myer, as well as by his general authority as guardian. He also insists the arrangement was beneficial to the heirs, as well as warranted by the action of the orphans' court. He also insists that he has fully closed and settled his accounts, both as administrator and guardian, by reason of which settlements, the complainants are concluded. In addition to this, he exhibits the receipts of McQueen for a sum of money in full balance of the personal estate of Frederick Myer, deceased. The record of the orphans' court, showing a settlement by Rives as guardian of the complainant Myer, is also exhibited. The proof taken fully shows that the arrangement, when made, was more beneficial for the minor heirs than a division or sale of their portion would have been.

The chancellor dismissed the bill. This decree is now assigned as error.

J. D. F. WILLIAMS, for the plaintiffs in error, insisted—

1. That a power conferred on a trustee cannot be exercised either by his attorney or executor, unless the authority to do so is given by the instrument creating the trust. [2 Wms. on Ex'rs, 628; Cole v. Wade, 16 Vesey, 27; Dayley v. At. Gen. 4 Viner, 485; Lucas v. Price, 4 Ala. Rep. 679.]

2. If a trustee invests the trust fund improperly or without authority, he is liable. [Lewen on Trusts, 328; Ringold v. Ringold, 1 H. & G. 11; Lupton v. White, 15 Vesey, 432; At. Gen. v. Fullerton, 2 V. & B. 265; Hart v. Teneyck, 2 Johns. Ch. 118.] In all cases of doubt as to power, the trustee should apply to a court of equity. [Lewen on Trusts, 318; Robb v. Thompson, 1 A. K. M. 514.]

COOK, contra, insisted that a guardian or trustee under particular circumstances may purchase for his trustee or ward. [7 Am. Com. L. 175; Ex parte Banks, 1 Rawles, 266; 1 Johns. Ch. 27; 2 Story's Eq. § 1357.] Independent of the

96

fact that the purchase was beneficial and proper, the parties are concluded by their receipts and settlements.

GOLDTHWAITE, J.—We are not prepared to say there is no exception to the rule that guardians are not permitted to change the personal property of the ward into real estate, or *vice versa*. Indeed it seems to be conceded they may do so, under particular circumstances. [2 *Story's* Eq. § 1357.] But in the view we take of this subject, it is unimportant to decide this, or the question of authority under the will of William Myer. It is entirely evident that if this arrangement for the purchase of the slaves of the adult children on account of the infants would not be sustained by a court of equity, the funds paid out by the guardian either as such or in his capacity of administrator, remain as personal assets. In this connection, the settlement of the accounts by the defendant with the complainant Myer in the orphans' court, and the receipt in full on account of the personal estate given by McQueen is conclusive, as the statute expressly provides in relation to the first, that such settlements shall not be impeached except for fraud in obtaining the same, (Dig. 304, § 37,) and we apprehend the same consequences attach *to a* receipt given upon a settlement, when no advantage was taken and when the knowledge was mutual.

It is not pretended that the proof makes out any fraud, imposition, mistake or ignorance of facts; and hence we conclude the parties must be considered as waiving their strict right to an account of the sum invested on their account, even if that investment was not to be sustained on principle.

Decree affirmed.