# State, *ex rel*. Phillips *v*. Benners, Chancellor.

## *Mandamus.*

### (Decided April 19, 1911. 55 South. 298.)

1. *Equity; Pleas; Joinder of Issue.*—Under the influence of the statute dispensing with replications to answers, issue on pleas to a bill is treated as joined without anything being done by complainant.

2. *Same; Admissions.*—All averments of a bill not expressly denied by plea to the whole bill stands as if expressly admitted.

3. *Same; Statute.*—The provisions of section 3115, Code 1907, apply to all pleas, whether so incorporated in the answer or not.

[State, ex rel. Phillips v. Benners, Chancellor.]

4. *Same; Reference; Disposition of Pleas.*—Where a complainant has not chosen to test the sufficiency of the pleas and the respondent has not chosen to answer and to take no testimony in support of his pleas, the Chancellor, without an opportunity to decree on the materiality or sufficiency of the pleas, but deeming them insufficient, and regarding a submission of them on their truth useless, and also regarding the allegations of the bill as substantially admitted by the pleas, may under the provisions of section 3115, refer the cause to a register to state an account.

5. *Mandamus; Proceedings; Laches.*—While the statute of limitations does not apply to applications for writs of mandamus, the principle that the court in exercising its discretion regarding the issuance of the writ will be guided by analogy of the statute, while obtaining where enforcement of a substantial and independent right is sought by the writ, does not obtain where control is sought of a mere dependent rule of practice or method of procedure; in such a case, application must be promptly made.

6. *Same.*—A petition for mandamus to compel a Chancellor to set aside an order of reference to the register to state an account, because made without a prior submission of the cause on the pleas is subject to the bar of laches; especially, where the order had been abided for more than a year, and until after evidence had been taken and the account stated, as such procedure cannot result in the denial of any substantial right under the pleas, the sufficiency and truth of which must be determined at the final submission of the cause.

Original petition in the Supreme Court.

Mandamus by the State on the relation of Lovick W. Phillips, directed to Alfred H. Benners, Chancellor, to compel him to set aside an order of reference, etc. Petition dismissed.

W. K. TERRY, W. T. STEWART, and J. M. CHILTON, for petitioner. The court was wholly without authority to order a reference to state an account between the parties until after answer was filed and testimony had been taken.—*Smith v. Vaughan,* 69 Ala. 92; 5 Enc. P. & P. 957; *Durr v. Hanover Nat. Bank,* 148 Ala. 363; 17 Enc. P. & P. 1005; 148 Ill. 276; 61 Hun. 337. It is improper to render a decree affecting the merits of the case until the cause is at issue as to all the parties, or unless issue has been waived by a decree pro confesso. —1 Bland 28; 4 H. & M. 376; 13 Ga. 24. If the reference is treated as for the purpose of securing evidence

for the benefit of the chancellor it was error to take the evidence before the cause was at issue as to the matters referred.—*Harris v. Moore*, 72 Ala. 507; Rule 49, Ch. Pr. Mandamus was the proper remedy.—High on Extraordinary Remedies, 193; *Ex parte Walter Bros.*, 89 Ala. 237; *Bridgeport Co. v. Bridgeport Co.*, 104 Ala. 276; *Ex parte Robinson*, 72 Ala. 389; *Ex parte Henderson*, 81 Ala. 36; *Ex parte State*, 115 Ala. 133.

A. LATADY, for respondent. The chancellor had ample authority for his action in this matter, and the petition should be dismissed.—Sec. 1115, Code 1907; *Phillips v. B'ham Indus. Co.*, 50 South. 77; *Strange v. Keenan*; 8 Ala. 816; *Branch Bank v. Strather*, 15 Ala. 51; 31 N. J. Eq. 39; 16 N. J. Eq. 475; 7 Peters 626; 18 N. J. Eq. 301; Adams Eq. 380; Bishpham's Eq. sec. 479, et seq.

SOMERVILLE, J.—This is a petition for mandamus and seeks to compel the respondent, who is chancellor of the Northwestern chancery division, to set aside and vacate certain interlocutory orders and decrees made and entered in the case of *Birmingham Industrial Co. v. L. W. Phillips,* now pending in chancery at Birmingham. The bill in that case is for an accounting, and the equity of the bill, as shown by its averments, has been affirmed on appeal by this court.—*Phillips v. Birmingham Industrial Co.,* 161 Ala. 509, 50 South. 77, 135 Am. St. Rep. 156.

In response to the rule nisi issued by this court, the chancellor has made his return, and the question is now upon the sufficiency of his answer in denial of the relief sought by the petitioner. As shown by the transcript and the chancellor's return, the chronology of the case, omitting matters not here material, is briefly as follows:

The bill of complaint was filed on June 20, 1908. On July 10, 1908, petitioner filed a plea in abatement to the jurisdiction of the court. On November 13, 1909, petitioner filed eight special pleas. On January 13, 1910, the complainant's solicitors moved the court for an order of reference to the register to hear proof and state an account between the parties. On the same day petitioner demurred to the motion for reference, assigning 10 separate grounds. On January 14, 1910, the court, after hearing the motion and the objections thereto, overruled the objections, granted the motion, and ordered the register to state an account in accordance with the terms of the contract set out in the bill. On February 15, 1910, petitioner filed with the register his objections to holding the reference as ordered. On October 26, 1910, the register filed his report stating the account as ordered, and ascertaining a balance of $2,957.74 due to complainant. On November 3, 1910, petitioner moved the court to set aside and vacate the reference decree of January 13, 1910, and objected to submission on the register's report. On the same day he moved the court for submission of the cause on his pleas and the testimony taken thereon, and, in the alternative, for postponement of any submission on the report until said pleas were submitted. On the same day (November 3, 1910), on the hearing of these several motions, a decree was entered overruling all of them. On the same day petitioner filed his exceptions to the register's report and on November 11, 1910, on submission on report and exceptions, a decree was rendered overruling the exceptions, and confirming the report. On December 8, 1910, petitioner applied to this court for mandamus, and the rule nisi was issued on January 21, 1911. The theory of the petition is that the decretal order for a reference was erroneous, as were

also all subsequent proceedings based thereon, because, no answer having been filed, there was no issue on the bill; and that, untested pleas being on file, an essential preliminary to further progress in the establishment of the bill and its asserted equity was a submission and hearing upon the sufficiency and truth of the pleas. And the orders complained of being interlocutory only, and not appealable, he is entitled to protection against their injurious consequences by a mandatory writ from this court. The injury especially predicated is his subjection to the burden and expense of proceedings which are unnecessary, and will be entirely vain and useless, in view of the defensive facts set up in his several pleas, which, he avers, must result in the denial of any relief to the complainant.

The theory of the chancellor, as set forth in his answer to the alternative writ, is substantially as follows: The petitioner filed special pleas, without formally answering. The complainant did not choose to test their legal sufficiency, and, by virtue of section 3115 of the Code of 1907, his omission to do so confessed nothing. The petitioner did not choose to test their legal sufficiency, and chose to stand upon his pleas without answering the bill formally. The court was powerless to compel either party to present the question of the sufficiency of the pleas for the formal judgment of the court thereon. The petitioner, without an adjudication of their sufficiency—and the chancellor deeming them in fact glaringly insufficient—was not entitled of right to take testimony and separately submit for decree on the truth of such pleas, since by the statute (section 3115) he would have been required, in spite of their truth to grant to complainant the appropriate relief, if his bill contained equity and was proved and, the equity of the bill being already established and affirma-

[State, ex rel. Phillips v. Benners, Chancellor.]

tive proof of its averments being dispensed with by vir-
tue of the implied admissions of the pleas, and the peti-
tioner not wishing or choosing to answer generally, the
cause was of necessity ripe for proceedings looking to
a general and final submission of all the issues involved.
In view of these considerations, it is urged that an in-
formal prejudgment of the insufficiency of the pleas is
an unavoidable consequence of the statute; and that if
the cause, under the conditions here presented, was not
to be regarded as at issue on both bill and pleas, then
further progress to its determination was impossible,
unless complainant could be required to test the suffi-
ciency of the pleas, and this the statute declares he need
not do.   Without deciding that the petition brings be-
fore us any action which can be controlled by the man-
datory writ of this court, we proceed to a consideration
of the propriety of the orders complained of, in which
aspect the petition has been viewed and treated by all
parties concerned.   The questions thus presented are
questions of practice and procedure peculiar to chan-
cery courts, and involve a review of the rules that have
heretofore prevailed in those courts, and the extent to
which they have been modified by section 3115 of the
Code of 1907.

1. It was a rule of the English chancery practice that
"if a plea to the whole or part of a bill is not set down
for argument within three weeks after the filing thereof
(exclusive of vacations), and the plaintiff does not
within such three weeks serve an order for leave to
amend the bill, or by notice in writing undertake to re-
ply to the plea, the plea is to be held good to the same
extent, and for the same purposes, as in the case of a
plea to the whole or part of a bill allowed upon argu-
ment; and the defendant may obtain an order as of
course for the plaintiff to pay the costs of the plea, and,

if the plea is to the whole bill, the costs of the suit." And, "where the plea is to the whole bill, the defendant by whom it was filed may at any time after the expiration of the three weeks obtain, as of course, an order to dismiss the bill."—1 Dan. Ch. Pl. & Pr. (6th Ed.) 695, 696.

Under the influence of our statute dispensing with replications to answers, it has been the practice in Alabama from an early period to treat the complainant's omission of the requirements of the English rule as a silent joinder of issue on the plea or pleas.—*Forrest v. Robinson*, 2 Ala. 215; *Tyson v. Decatur Land Co.*, 121 Ala. 414, 419, 26 South. 507. It results in the present case that technically there was issue joined on the pleas at the time of the order of reference; and, the pleas being to the whole bill, all averments of the bill not expressly denied by the pleas stood as if expressly admitted.—Sims' Ch. Pr. § 465; 1 Dan. Ch. Pr. 836; *Scharfenburg v. New Decatur*, 155 Ala. 651, 47 South. 95.

2. "The general rule, especially in suits in equity, is that, where there is an issue the determination of which may render an accounting unnecessary, the reference should not be ordered until such issue is decided, and an accounting found necessary."—34 Cyc. 785. This assumes, we apprehend, that the preliminary issue is a material and valid issue, or at least one which, if established for the defendant, compels a decree in his favor against the complainant's bill. It is also a general rule that, if the cause is not at issue as to all the parties defendant, no order can be made affecting the merits of the case.—*Vaughan v. Smith*, 69 Ala. 92; 5 Ency. Pl. & Pr. 957. And it is elementary, of course, that there can be no submission for final decree without either an answer filed, or a decree pro confesso taken. —*Durr v. Hanover Bank*, 148 Ala. 363, 42 South. 599. Under the English rules, when a plea was overruled for

insufficiency, the decree was for the defendant to make further defense, which he might do by a new plea or by answer.—1 Dan. Ch. Pr. 699.

When the complainant took issue on a plea, although the issue was the truth of the plea only, which must be proved by the defendant, this did not prevent the complainant, if he chose, from entering into evidence to prove the whole case made by his bill.—1 Dan. Ch. Pr. 697. And obviously, if there was submission and hearing on the truth of a plea, if the plea was found untrue, the decree was, not that defendant should answer, but that the complainant should have his relief, with an order for the defendant to make discovery by answer, if the complainant's case required such discovery.—See Sims' Ch. Pr. § 467.

3. Since the Code of 1852 defendants have not been required to plead specially in any case, but have been allowed to incorporate all matters of defense in their answers, thereby giving to them the advantage of a general sumission on both their pleas and answers at one and the same time. This practice no doubt multiplied instances of equitable miscarriage through the inadvertent joinder of issue on immaterial or insufficient pleas; and, to avoid such results, the code committee incorporated in the old statute new provisions which radically change the pre-existing practice.

Section 3115, Code 1907, is: "A defendant may incorporate all matters of defense in his answer, and is not required to plead specially in any case, but shall not take or have any advantage by pleading or proving an immaterial, irrevelant, or untrue plea, and the complainant is not required to test the sufficiency of any such plea, or to move to strike it, and if his bill contains equity and is proved, he shall have the appropriate relief, notwithstanding any such special plea may have been pleaded and proved." As suggested by the

learned author of Sims' Chancery Practice, § 467, the language of this statute is perhaps susceptible of the construction that its new provisions are applicable only to pleas incorporated in the answer. But it is equally susceptible, we think, of the broader construction that applies it to all pleas, whether so incorporated or not; and, in view of the evil sought to be corrected, as well as on principles of general policy, we adopt the latter construction, and give to the language added the full remedial force and operation which we think was manifestly intended.

4. Under the operation of this statute, thus construed, the chancellor was confronted with a situation almost anomalous. The complainant, exercising the privilege given him, chose not to test the sufficiency of the pleas. The petitioner (the defendant) chose not to answer, and took testimony in support of his pleas, his insistence being, apparently, that he was entitled to proceed with that phase of the case, and determine first the sufficiency and truth of his pleas; and, if ruled adversely to him, to then interpose an answer, which would for the first time put the bill at issue and authorize proceedings looking to its establishment and the development of its asserted equity.

The chancellor, without an opportunity to decree upon the materiality or sufficiency of the pleas, but deeming them glaringly insufficient, regarded a submission of the pleas on their truth as being worse than useless, and an unwarrantable consumption of time. And, looking to the mandate of the statute that upon any submission on such pleas the complainant should have the appropriate relief if his bill were proved, and also regarding the allegations of his bill as being substantially admitted by the pleas, he held that the cause was ripe for reference to the register to ascertain by the statement of an account what balance, if any, was due

[State. ex rel. Phillips v. Benners, Chancellor.]

to the complainant, in order that the appropriate de-
cree might be rendered without a further submission
and unnecessary delay.

Without passing upon the correctness vel non of the
chancellor's views as to the merits of the pleas before
him, we are of the opinion that his mode of procedure
was warranted, if not rendered imperative, by the pro-
visions of section 3115 of the Code; that his judgment
with respect to the pleas as expressed or implied in his
final decree can be reviewed on appeal to this court;
and that his actions in the premises cannot be con-
trolled by any mandatory writ.

5. We have considered the question of the laches of
the petitioner as a bar to his right to the relief here
sought, and are clearly of the opinion that his long and
unexplained delay is fatal to his petition. "It is usually
held that the general statute of limitations does not ap-
ply to applications for the writ of mandamus; the pro-
ceedings not being an ordinary civil action to which
alone the statute applies. But the court in exercising
its discretion in regard to the issuance of the writ will
be guided by the analogy of the statute as in equity
cases."—19 A. & E. Ency. Law, 755. This principle
applies where the petitioner is seeking the enforcement
of a substantial right, as to which there can ordinarily
be no reason for exacting greater diligence in the one
form of proceedings than in the other. But there is a
clearly defined distinction between the assertion of a
substantial and independent right, and the control of
a more dependent rule of practice or mode of proced-
ure, however advantageous it may be to a party liti-
gant.—*People v. Board of Supervisors,* 12 Barb. (N.
Y.) 446, 450. In the latter case there is every reason
why one who complains should not delay his applica-
tion for relief. He should be vigilant to know his
rights, and diligent to prevent their abuse. Considera-

tions of general propriety, as well as the dignity of courts, and the integrity of their proceedings, demand promptitude of action, if he would interfere.

The record shows that the decretal order for a reference to the register was made on January 13, 1910. The execution of the order was not completed until October 26, 1910, when the register filed his report. And not until December 8, 1910, did the petitioner apply to this court for relief. It thus appears that he abided the operation of the obnoxious order for almost a year. In the meantime the register had proceeded to examine witnesses, receive evidence and state the account, with an expenditure, we may assume, of much time and labor on the part of all concerned. So the evil anticipated and sought to be averted by petitioner had now become an established fact, and in its nature incurable, and it could be of no legitimate advantage to him to vacate and annul those proceedings now. Indeed, such a course would be obviously unjust to the complainant in the cause. Neither the order for a reference nor for a submission for decree on the register's report, nor the decee confirming the report, determines the question of petitioner's liability to pay to complainant the sum ascertained to be due on account. They were but preliminaries to a final decree contingently favorable to complainant, and they cannot result in denying to petitioner any substantial right founded on his pleas, if sufficient and true—questions which must and will be formally determined at the final submission of the whole cause. This petition therefore falls within the influence of the distinction noted above, and is undoubtedly subject to the bar of laches.

The prayer for the mandatory writ must be denied, and the petition will be dismissed.

SIMPSON, ANDERSON, and SAYRE, JJ., concur.